## BANGS, Receiver, &c., *v.* DUCKINFIELD.

In the appointment of a receiver under § 36 (2 *R. S.*, 463), " of proceedings against corporations in equity," the Supreme Court acts as one of general jurisdiction, and not as exercising a special statutory power.

Where such appointment was made, after hearing the corporation by its counsel, it is not impeachable, in an action by the receiver, for an irregularity in the proceedings, which might have been fatal had the corporation appealed : as that it was made on the petition of a person describing himself as the attorney of a creditor, and not upon the petition of the creditor himself.

Chap. 71 of 1852, enlarging the powers of receivers previously appointed, is a public and general act, and not open to constitutional objection in its operation upon a corporation not before dissolved by a final judgment.

An assessment made by the receiver of a mutual insurance company, under an order of the court, made on his application without notice, stands on the same footing as one made by the board of directors, and is not conclusive upon the person assessed *as a judicial determination.*

It is no objection to such assessment, or to the notice thereof, that the persons called upon to contribute are apprised of the amount of their liability only by a statement of the rate per cent at which the premium notes in force, at specified dates, are respectively assessed.    It is enough that the makers of the notes, who are bound to know their sum, date, &c., are furnished with the data for computing the amount.

But where such notice specified different rates of assessment for " small notes" and " large notes," without showing in any manner how a given note was distinguishable as belonging to one or the other class, and there was no evidence of any rule on the subject contained in the charter or by-laws, the notice *held* inoperative for uncertainty.

Whether it is in the power of a mutual insurance company to prescribe different rates of contribution upon a distinction founded only on the magnitude of the premium notes, *Quere.*

APPEAL from the Supreme Court.    The action was brought to recover the amount of a premium note made by the defendant to the Genesee Mutual Insurance Company, a corporation created by chapter 241 of 1836, with the powers and subject to the restrictions given to the Jefferson County Mutual Insurance Company by chapter 41 of 1836. Upon the trial before Mr. Justice MARVIN, at the Genesee Circuit, it was proved that the plaintiff was appointed re-

ceiver upon an order made at special term, October 7, 1851, entitled as in an action of *William Lafferty, plaintiff,* v. *The Genesee Mutual Insurance Company,* upon a petition signed and verified by Harry Wilber, and commencing: " The petition of [*William Lafferty, the above named plaintiff, by*] Harry Wilber, the above named plaintiff's attorney, of Batavia, Genesee county, New York," &c. The words in italics and within brackets, were not in the petition when originally presented, but were inserted in pursuance of an order, directing such an amendment, made May 30, 1853. The petition showed that an execution had been returned unsatisfied upon a judgment recovered by Lafferty against the corporation, and it prayed a sequestration of its property and the appointment of a receiver. The order recited that it was made after hearing A. P. Hascal, counsel for the said defendant.

The defendant in this action insisted, on the trial, and brought the question here by proper exceptions, that the statute (2 *R. S.,* 463, § 36) providing for the appointment of a receiver " upon the petition of the person obtaining the judgment, or his representative," the court had no jurisdiction to appoint upon the petition of Wilber, who appeared to be the attorney of the judgment creditor, not by direct averment, but merely by words descriptive of the person, and that the original petition being void of substance to give jurisdiction, the proceedings for its amendment could not affect the appointment.

Some of the assessments of losses upon which the defendant was claimed to be liable, were made by the receiver under the authority of section 2, chapter 71 of 1852, " to facilitate the collection of debts against corporations," such assessments having been made with the sanction of the court, in an order obtained by the receiver, *ex parte,* without notice. The defendant objected to the evidence of such assessments, on the ground that the powers specified in the act are such as, by the laws existing at the time of the

appointment, could only vest in a receiver, on a final decree dissolving a corporation ( which was not this case ) ; and that in order to vest such power in the plaintiff, the act must express the object in its title as required by the Constitution in respect to private and local acts. A further ground was the *ex parte* character of the order and assessments in pursuance thereof. The evidence was admitted, and the defendant took an exception.

The order directing the assessment, provided that the receiver " levy the following rates of assessment on the pre mium notes belonging to the said corporation, now in his hands as such receiver. On all of said notes in force on the 22d day of August, 1848, .01286 per cent. [ It then specified four other classes with the rates of assessment on each of them respectively, and proceeded : ] On all notes in force on the 2d day of January, 1850, on the large class notes, .00128 per cent, and on the small class notes, .0032 per cent. On all notes in force on the 22d day of February, 1850, on the large notes, .00279 per cent ; on the small notes, .00698 per cent," continuing with a specification in this manner of fifty-three further classes, with the rates for large notes and small notes in each of them, respectively, but without any description of " large notes," " large class notes," " small notes" or " small class notes," or of the distinction between them. The notice published and served by the plaintiff, contained a transcript of the order, and did not distinguish or define the classification of notes as large and small, otherwise than as above stated. The assessment was made in conformity to the order, by carrying out, in a book kept by the receiver, the amount for which each note was liable at. the rate specified for each class within which it was included, and adding the several amounts to obtain the total assessment upon each note. Neither such total nor the items composing it were stated in the receiver's notice.

The defendant objected to the notice of assessment for reasons which are sufficiently stated in the following opinion

and moved for a nonsuit for these and the other reasons above stated, which was denied, and he took an exception. The plaintiff had a verdict. The exceptions were ordered to be heard in the first instance at general term, and being so heard in the eighth district, judgment was rendered on the verdict, and the defendant appealed to this court. The cause was submitted on printed arguments.

*Joshua L. Brown,* for the appellant.

*Selah Mathews* and *Nicholas Hill,* for the respondent.

JOHNSON, Ch. J.   When, in *Attorney-General* v. *The Utica Insurance Company* (2 *John. Ch. R.,* 371), and in *Attorney-General* v. *The Bank of Niagara* (*Hopk.,* 354), Chancellor KENT and Chancellor SANFORD declined to exercise the jurisdiction over corporations which was invoked in those proceedings, I do not understand that either of those judges supposed that his decree would, if it had affirmed the jurisdiction, have been either absolutely void or collaterally examinable. In such inquiries the term "jurisdiction" had a peculiar and somewhat technical use in its application to courts of general equitable jurisdiction. It related not to the naked question of power, but rather to the fact that such power had or had not been usually exercised. Thus, the question presented to a court of equity by the objection that the complaining party had a full, adequate, and complete remedy at the common law, related to the jurisdiction of the court of equity, and is constantly spoken of in the cases in that way. But so far was it from presenting the question of mere power, that if the objection was neither taken by demurrer, plea nor answer, the court proceeded and gave judgment on the merits, notwithstanding it would have rejected the jurisdiction had the question been raised at the right time. This points to the true line of distinction in the use of the term "jurisdiction." The question is properly one

of jurisdiction, only when a judgment asserting the power of the court would be void and assailable collaterally, in every other court. There are, I apprehend, very few cases in which that position could be affirmed in respect to a court possessing general jurisdiction in law and equity, on grounds relating to the subject matter of a controversy. If the Court of Chancery had originally decided the cases cited the other way, no court would collaterally have examined the correctness of the decrees. They might in that case, and we may assume would, have reversed on appeal, but the reversal would have proceeded on the ground that they were erroneous judgments—not void judgments—and would not have denied the authority of the court to make a decree, but would have asserted a want of equity in the case of the complainant.

The provision of the Revised Statutes (2 *R. S.*, 463, § 36) is therefore to be regarded as creating a new equitable right, the enforcement of which it devolved upon the Court of Chancery. With this view the decision of Chancellor WAL-WORTH agrees, who held that relief under that section might be had by bill, though a proceeding on petition only is named in the statute. (*Judson* v. *Rossie Galena Company*, 9 *Paige*, 600.) It is further fortified by the decision of this court, in the matter of *Canal and Walker streets* (2 *Kern.*, 406), where it was held that the power of reviewing and confirming the report of commissioners of estimate and assessment in opening streets, conferred by the act of 1813 on the Supreme Court, became a part of the general authority of the court, and that the powers incident to its general jurisdiction, so far as applicable, at once attached to the new subject.

When, therefore, in this case the petition was presented to the Supreme Court, it rightfully could proceed to make a judicial determination upon the matter presented in the petition as the subject for its action. The defendant appeared upon the application, and the court must be taken to have regarded the petition as presented on behalf of Laf-

ferty, by his attorney, as it proceeded on that petition to make an order in a suit by *William Lafferty, plaintiff,* v. *The Genesee Mutual Insurance Company.* The irregularity may have been gross, and have afforded to the defendants, in the suit, a sufficient ground of appeal, but it did not go to take away the authority of the court. This right to appeal was the right of the defendants in that proceeding. They did not exercise it, and are precluded in respect to it, and no one else can raise the question. So far, therefore, as this case depends on the position that the receiver's title is not made out, the defence must fail. Whether the proceeding should regularly have been commenced under the Code as a special proceeding, or as an action, is immaterial in a collateral suit. The subject matter was within the authority of the court, and the parties appeared to the process, whatever it was. Under those circumstances, what binds them can be questioned by no one else.

The receiver thus appointed falls directly within the terms of chapter 71 of the Laws of 1852, and takes, by force of that act, the powers which it confers, unless some constitutional difficulty is in the way. Those powers are such as, in the nature of things, were very fit to be bestowed upon a receiver of such a company, and looked to the protection of the interests of the creditors. The act is objected to apparently on the ground of its being a private and local bill, and not expressing its object in its title, as is required by the Constitution in bills of that nature. Such, however, is not its character. It is general and not local, public and not private. It regulates and makes efficient a remedial process existing by law, and no more conflicts with the Constitution than would an order made by a court enlarging the powers of a receiver already apppointed.

The proceedings of the receiver in making an assessment are of no greater force than the same act would have possessed if done by the board of directors. It is true that he has made an application to the court, and it has approved of

his proposed assessment. This application it was necessary for him to make by the provisions of the act of 1852, but the approval of the court only places his act in the same position as an assessment by the directors would have occupied. The defendant was not a party to the suit in which the application was made, and had and could have no notice of the application. As to him, therefore, in a point directly involving his supposed liability, the determination of the court approving the assessment is not to be regarded as a judicial decision, concluding him as to the particulars of the assessment.

I find no obstacle to the plaintiff's recovery in the objection that neither the assessment nor notice specify the name of the party bound to contribute, nor the amounts of the notes. In this respect this proceeding is quite like the ordinary case of payments on capital stock subscribed. Calls upon stock are made of so much on each share; and every man is presumed to know whether he is a stockholder, and how many shares he owns, and to be able to calculate, if the call is so much per cent on each share, the sum in dollars and cents which he is to pay. This practice has been very general if not universal, and many recoveries have been had on such calls. The call or notice is certain, because the parties interested possess, or are deemed to possess, the means of reducing it to certainty. The inconvenience of a contrary practice is certain, and it is stated, by way of argument, that in this very assessment, if each note assessed were separately stated, and rated for each assessment, no newspaper, in the county where publication was to be made, could have contained the notice. In this respect the notice and assessment are unobjectionable.

But there are other objections, which are insuperable. The defendant's note bears date October 19th, 1848, and his policy was to run five years from that date. Of the sixty classes of notes on which the assessment was made, fifty-nine would include his note; and in these fifty-nine classes, fifty-

five impose two rates of assessment, a smaller rate on what are called "large notes," and a larger rate on the "small notes." But neither the assessment nor the notice affords any criterion for determining what those terms mean, nor is there anything in any part of the case to show what the distinction between these classes was, or to create an inference that the defendant could determine to which class his note was deemed to belong. It does appear that, at the trial, the plaintiff claimed to recover the whole amount of the defendant's note, for the non-payment of two sums assessed at the large note rate; but on what ground he so limited his claim, or whether it was so limited as a mere matter of discretion on his part, does not appear. The case discloses nothing further on the subject, except the statement of the plaintiff, in his petition to the court to approve his assessment, that the premium notes are divided into two classes, one of which is called "the large note class," the other "the small note class;" that but a small portion of the notes are of the small note class, and that these are only liable to be assessed for a part of the losses; and that the proper ratio of the rate of assessment on them, to the rate on the large note class, is the ratio of one to two and a half. But this statement contained in the petition is not evidence against the defendant; the petition itself being in evidence only to show the necessary preliminary approval by the court of the plaintiff's proceedings. We are, therefore, bound to say, that, in this respect, for aught that appears in the case, the notice failed to inform the defendant of what he was required to pay, and that, therefore, he was not in default in not paying.

We find in the charter no provision for different rates of contribution to losses by the insured in this company. Its language and effect were considered in *Bangs* v. *Gray* (2 *Kern.*, 477), and it was held that the directors had no arbitrary discretion in fixing the amount of the assessments, and that it required the assessments to be in proportion to

the amount of the respective premium notes. The charter (*ch.* 241, *Laws of* 1836) adopts the provisions of the charter of the Jefferson County Mutual Insurance Company (*ch.* 41, 1836), and the provisions of sections 6, 7, 8 and 10 are, in substance, that the sum to be paid by each member shall always be in proportion to the original amount of his deposit note. This is inconsistent with two rates of contribution among the makers of premium notes; at least without some evidence of the ground or principle on which the distinction in rate has been made.

The judgment should be reversed, and a new trial ordered.

GRAY, J., expressed no opinion ; all the other judges concurring,

Judgment reversed and new trial ordered.

[The residue of the cases decided at March term, in the next volume.]