

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable John R. Shook
Criminal District Attorney
Bexar County
San Antonio, Texas

Attention: L. J. Gittinger

Dear Sir:

Opinion No. 0-6435
Re: Whether certain property
belonging to Trinity
University, under the
facts submitted, is ex-
empt from taxation.

From your request for opinion and accompanying in-
struments, we state the following facts on which this opin-
ion is based:

The Board of Trustees of Trinity University have
filed with the county judge and county commissioners of Bexar
County a petition for exemption from taxes of two tracts of
land: (I) the first tract consists of approximately 24 acres
of land recently purchased from the Shook Estate and Eva
Vanderhoeven. The contracts for the purchase of this prop-
erty were dated November 27, 1944, and November 16, 1944,
respectively; the deeds to the University were dated Febru-
ary 27, 1945, and March 7, 1945; and both deeds were filed
for record in the office of the county clerk on March 14,
1945. (II) The second tract was purchased from the city of
San Antonio and is described as tracts numbers One (1) and
Two (2) in a deed dated November 2, 1944, executed jointly by
the city of San Antonio and said Board of Trustees, and re-
corded in Vol. 2091, pages 72-74, of the Deed Records of Bexar
County, Texas.

O. M. Fitzhugh, Secretary of the Board of Trustees
of the University, in a letter dated March 14, 1945, states
that: "This property has been acquired to become part of the
campus of the Trinity University." In a letter dated April 23,
1945, Fitzhugh requests the commissioners' court to exempt

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

the property described in the petition and "cancel any and all taxes against said property beginning January 1, 1945."

You ask the opinion of this department whether the property described above as "first tract" and "second tract" is exempt from the payment of taxes.

Unquestionably, the first tract cannot be exempt from taxes for the year 1945. Under Article 7151, all property "held or owned on the first day of January in the year for which the property is required to be listed or rendered" must be listed for taxation between January 1 and April 30. The ownership of property on the first day of January of any year creates a liability on the part of the owner for taxes levied upon such property for that year. Winters v. Independent School District of Evant, 208 S.W. 574.

Since this property was privately owned on January 1, 1945, the tax accrued as against the owners on that date and they may not be cancelled or removed from the tax rolls regardless of any use to which it may thereafter be dedicated. As we said in Opinion No. 0-4956:

"Neither the Constitution nor the statutes, however, release or authorize the release or cancellation of ad valorem taxes which accrued prior to the date on which such property is, by such political subdivision, devoted to public use."

It should be noted that Trinity University was created by a special charter granted by the 12th Legislature of the State of Texas in 1870. Special Laws, 12th Legislature, Called Session, 1870, p. 160, ch. 83. Section 13 of this charter provides:

"The property owned and held by said institution being set apart exclusively for educational purposes, is hereby declared to be exempt from both State and County Taxation."

Section 56 of Article III of the Constitution of Texas (1876), which is in substantially the same language as

Honorable John R. Shook, page 3

a similar provision in the Constitution of 1869, which was in effect when this charter was granted, provides:

"The Legislature shall not, . . . pass any local or special law, . . . exempting property from taxation."

We therefore hold that the provision of Section 13 of the University's charter is ineffectual, in itself, to create the exemption of this property sought by the University in its petition.

The policy of the State regarding the exemption contained in Article 7150, Section 1, Revised Civil Statutes, pertaining to schools, is very clearly stated by Justice Robertson in Cassiano v. Ursuline Academy, (1885) 64 Tex. 673, 675:

"It has been the policy of the state since 1849 to encourage educational enterprises by exempting them from any share of the burdens of government. . . . The constitution of 1876, so far from modifying this policy, makes munificent provisions for the maintenance of free schools. There has been no antagonism between the public and private schools, to warrant the inference that the framers of the constitution, in the use of the word building, intended a spiteful discrimination against private schools.

"The education of the masses is now recognized as a function of state government. Those who, from charitable considerations, to forward sectarian views, or for private profit, have organized or conducted schools, have assisted the state in the performance of a duty it owes to its citizens, which cannot be too thoroughly performed, and which the state has never assumed that it had either the means or the machinery of doing sufficiently well without private assistance. The Ursuline Academy is performing its part in this branch of the public service, and it should rather be encouraged by aids, than impaired in its usefulness by a tax upon its pitiful revenues.

Honorable John R. Shook, page 4

".  .  .  .

"All the buildings and all the land sought
to be sold by appellant were necessary and used
for the proper and economical conduct of the
school.  .  .  .  The grounds were used for the
recreation of the pupils, and to supply the school
with vegetables.  Authority is not wanting to ex-
tend the exemption to land much less directly em-
ployed to forward the interests of the school.
.  .  ."

Note Gainesville v. Brenau College, 150 Ga. 156, 103
S.E. 164, which cites and relies upon the Cassiano case.  The
court, while recognizing as salutary the rule that a statute
exempting property from taxation is to be strictly construed,
said:

"Nevertheless, buildings erected for and used
as colleges, incorporated academies, and seminaries
of learning are usually permanent in character.
In a relative sense they are immovable.  When,
therefore, so solemn an instrument as the Consti-
tution authorizes the exemption of all such build-
ings, and when the general assembly in exercis-
ing its power so conferred upon it exempts from
taxation all such buildings, a construction of
the statute consonant with the purpose of the ex-
emption and the settled policy of the state, as
reflected by the exempting statute, must be adopt-
ed.  Buildings will therefore be construed to em-
brace the land upon which they are located <u>and the
land adjacent thereto necessary for their proper
use, occupancy and enjoyment</u>, provided, of course,
'the property be not used for purposes of private
or corporate profit or income.'"  (Emphasis ours)

In this and many other cases it was held that recrea-
tion grounds and campus are included within the exemption.  The
determination as to the area of land within a tax exemption ex-
tended to property used for educational purposes is governed
generally by the necessity, or lack of necessity, of the land

Honorable John R. Shook, page 5

for the full carrying out of such purposes. The exemption has been held in effect to extend to land thus found to be reasonably necessary to the full exercise and enjoyment of such purposes.

See 134 A.L.R. 1176; 143 A.L.R. 274.

Our Opinion No. O-3083, approved February 15, 1941, pertaining to lands belonging to the College of Marshall, is in keeping with the above-cited rulings, and states, in part:

"From the above our opinion follows that the land on which the school plant is located and which is used exclusively for educational purposes, including the necessary yards and recreational grounds, is exempt from taxation. . . ."

Therefore you are advised that if the Board of Trustees have made a showing sufficient to convince the commissioners' court that there has been a dedication of the property referred to as tract two (II) in our statement of facts to the purposes for which it was acquired, and if the court is convinced that such property is reasonably necessary to the full exercise and enjoyment of the educational purposes of the University, it is exempt from taxation and should not be entered on the rolls by the Tax Assessor and Collector.

Trusting that this fully answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By _Arthur L. Moller_
Arthur L. Moller
Assistant

ALM:db

APPROVED
OPINION
COMMITTEE