## LYDIA B. DENNY *vs.* JOHN E. TYLER.

A married woman committed to an insane asylum by her husband is not entitled to be discharged, on *habeas corpus*, if it appears that the asylum is well managed, and she is subjected to no unnecessary or unusual restraint or improper treatment, and her remaining there will tend to promote her recovery. And it is immaterial that, previously to her commitment, she had consulted counsel in reference to a divorce, and has since filed a libel for divorce.

HABEAS CORPUS. The original petition was filed by the brother of Mrs. Lydia B. Denny, and alleged that she was imprisoned and restrained of her liberty in the McLean Asylum for the insane in Somerville by the respondent, who was the superintendent of that institution.

At the hearing in this court, before *Chapman*, J., in October 1861, it appeared that upon the certificate of two physicians and the request of her husband, Reuben S. Denny, Mrs. Denny was committed to the asylum on the 25th of March previous being then and still insane; that she was maintained there by her husband, who made liberal provision for her; and that probably her remaining there would tend to promote the restoration of her health. She had a mother, brother, sister and sister's husband residing in Brooklyn, N. Y., who were present at the hearing, claiming the custody of her, and desirous to receive

and maintain her.  A short time before her commitment she consulted counsel in regard to obtaining a divorce from her husband for cruelty and adultery, and stated acts of cruelty which her counsel advised her were good grounds for a divorce.  She informed her husband that she had thus consulted counsel. Since her commitment, her counsel has been permitted to see her but once.  On the day of the hearing she signed a libel for divorce, which was filed.  The nature of her insanity was jealousy towards her husband, in reference to a particular person, and it appeared that her jealousy was unfounded.

The case was reserved for the determination of the whole court, upon these facts.

*S. E. Sewall*, for the petitioner.

*B. F. Thomas & J. Lowell*, for the respondent.

BIGELOW, C. J.  The facts stated in the report of the judge who heard this case on the return of the writ do not show any illegal or unreasonable restraint or confinement of the person in whose behalf the writ was issued, from which she is entitled to be released by an order of this court.  It appears that she is suffering under mental aberration, which renders medical treatment expedient and necessary; that she has been placed by her husband in an institution established by an act of incorporation granted by the legislature of the Commonwealth for the purpose, among others, of affording proper care and attention to persons who are insane; and that she is maintained there by her husband, who makes liberal provision for her comfort and support.  It is not shown that any unnecessary or unusual restraint is placed on her person, or that she is subjected to any treatment which is inconsistent with her physical or mental condition.  On the contrary, it is expressly found that her continued residence in the institution will tend to promote her restoration to health. No allegation is made that the institution is not wisely and judiciously conducted, nor is it pretended that any want of skill, attention or kindness renders it in any respect an unfit asylum for the treatment and cure of persons afflicted with nervous diseases or mental disorganization.  Under such circumstances, we are unable to perceive any valid reason for asking the intervention

of this court to discharge Mrs. Denny from the custody of the respondent. The evidence which has been adduced, so far from showing any harsh or unjust restriction on her freedom imposed by her husband in a spirit of unkindness or from any improper motive, tends strongly to show that his conduct in placing her in charge of the respondent was dictated by a sense of duty and by a desire to afford her the benefit of the highest skill and most suitable appliances to aid in her restoration to health.

We cannot accede to the proposition advanced by the learned counsel for the petitioner, that no one but a guardian legally appointed can commit a person who is actually insane to an appropriate asylum, except in case of sudden emergency, and when danger to himself or others imposes the necessity of restraint on acts which are not controlled by reason. There may be cases where such a rule would be applicable. If a person suffering under mental derangement had no near relatives or was among strangers, or if his situation and circumstances were such as to create a conflict of opinion and feeling concerning his care and custody among those on whom it was incumbent to provide for his comfort and welfare, it might be expedient and necessary to clothe some one with the legal authority and power to take charge of his person. But no such exigency exists in ordinary cases where a person of disordered intellect, who is capable of exerting no intelligent will or sound discretion in his own behalf, is placed by relatives or friends, acting in good faith, under such restraint as is necessary to the proper treatment of the disease under which he is suffering. Experience has shown that one of the most essential aids in the cure of insanity is the withdrawal of the patient from all ordinary and accustomed scenes and associations, and his entire seclusion and separation from all exciting and disturbing influences. As he is incapable of forming a judgment concerning his own condition or the means requisite for his security and restoration, it is absolutely necessary that thers should act for him, and take such steps as may be needful to his proper care and custody. No principle of right is violated in putting a reasonable and salutary restriction on the liberty of a person who, from the loss of reason and judgment,

is unable to provide means for his own cure, or who is liable to use freedom from restraint in such way as to increase or prolong his malady. Nor is there any requisition of law which renders it necessary that a guardian should be appointed merely because a person has become insane. The custody and care necessary and proper for the protection and relief of those who are so afflicted, and who do not come within the class entitled to public support, may be safely left in most cases in the hands of those who, acting from a sense of duty and in obedience to the dictates of affection, will take care to provide with kindness and sympathy for their comfort and welfare. A husband or a father would gain no new motive to induce him to act with judicious and considerate care towards an insane wife or child by a formal appointment as guardian. The sanction of a technical legal custody would add nothing to the security against improper or unlawful restraint, nor would it diminish the danger of abuse, neglect or tyranny. Oppression is quite as likely to be practised under the forms of law as without them. There may be cases, no doubt, where persons deprived of their reason, and incapable of acting or judging for themselves, may be subjected to harsh treatment and unreasonable and unnecessary restraint by their relatives or by those into whose custody they may happen to fall. But when such cases shall arise, the law will furnish an ample remedy, either by appointing some suitable person as guardian to take the care and control of the person, or by setting the party free from the illegal restraint under which he may be suffering. But the possible existence of such abuses furnishes no ground on which to found an argument in support of the right and duty of this court to interfere in a case like the present, for the purpose of discharging a person from a restraint which is neither unnecessary nor unreasonable, but which is shown to be judicious and salutary.

The infirmity of the argument urged by the learned counsel in support of the writ consists in assuming that the abstract truth that no one can be deprived of his liberty or imprisoned against his will is of universal application, and that this court is bound to interpose and discharge all persons who are subjected

to any restraint which is not imposed by the judgment of their peers or the law of the land. But the great truth on which this argument is based, like all general rules and principles, is subject to many qualifications and limitations. Taken in its literal sense, it would render unlawful the restraint of a person under the delirium of a fever or in the paroxysm of a fit. Applied without reference to the paramount law of necessity and hu manity, it would render impracticable the performance of many of the duties of domestic and social life. It is therefore to be taken with due limitations, and to be construed in a reasonable manner, with reference to the practical concerns of life and the circumstances of each particular case. It certainly can have no legitimate application where it is shown that the person who is alleged to be imprisoned or restrained of his liberty is insane. In the eye of the law, such person has no will. He cannot be said to be capable of exercising an act of volition. In determining on his right to be set free from restraint, his will cannot, as in case of a sane person, be made a test by which to ascertain the legality of the custody which is claimed over him. The law in such case can look only to the question whether the restraint to which he is subjected is unnecessary and unreasonable; and if it is ascertained that it is not, then the judgment must be that the restraint is not illegal, because it is only such as sound reason and an intelligent will sanction and approve. Such we understand to have been the doctrine which has been heretofore applied by this court in a case similar to the one at bar, and which is briefly reported in 8 Law Reporter, 122.

We are unable to perceive that the proceedings which have been taken by Mrs. Denny, or in her behalf, in relation to the commencement and prosecution of a libel for divorce from her husband can have any legitimate bearing on the question of her right to be discharged from the custody of the respondent. There is no proof to sustain the allegation that her commitment to the asylum was made with any view to interfere with her right to seek a legal separation from her husband. Nor can it prevent the adoption of any proper steps which may be deemed necessary to enable her to assert her claim for a divorce in a

court of justice. A libel may be sued out at any time, under Gen. Sts. *c.* 107, § 16, by a guardian duly appointed, and such appointment can be obtained if it shall be adjudged necessary and proper, on the application of her relatives who are now prosecuting this suit. But as the case is now presented, we can give no weight to a libel for divorce which has been commenced by an insane wife against her husband, when it appears that her insanity takes the form of jealousy towards her husband, and involves the delusion of his infidelity to his marriage vow.

The result therefore is that no illegal restraint or imprisonment of Mrs. Denny is shown, and the order must be that she be remanded to the custody of the respondent.