*WHITE v. WHITE et al. (No. 535.)*
(Court of Civil Appeals of Texas. El Paso. Jan. 14, 1916. On Rehearing, Feb. 17, 1916.)

1. JURY ⊙⇒11—RIGHT TO JURY TRIAL—FEDERAL CONSTITUTION.

Const. U. S. Amends. 6, 7, guaranteeing right to jury trial, apply only to federal courts, and not to state courts.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 19–24; Dec. Dig. ⊙⇒11.]

2. JURY ⊙⇒33(1)—INQUISITION — CONSTITUTION AND STATUTES.

There being under statute a right to jury trial in lunacy proceedings at date of adoption of Const. art. 1, § 15, providing that "right of trial by jury shall remain inviolate," Acts 33d Leg. c. 163, substituting a commission of doctors for a jury in such proceedings, is invalid.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 226, 227; Dec. Dig. ⊙⇒33(1).]

3. JURY ⊙⇒32—CONSTITUTIONAL GUARANTY—NUMBER OF JURORS.

It is the right of trial by jury, and not the number of jurors previously obtaining, that is guaranteed by Const. art. 1, § 15; it is further providing that the Legislature shall pass such laws as may be needed to regulate the same, and article 5, § 17, fixing the number of jurors in the county court at six.

[Ed. Note.—For other cases, see Jury, Cent. Dig. §§ 221–225; Dec. Dig. ⊙⇒32.]

4. HABEAS CORPUS ⊙⇒109 — DISPOSITION OF PERSON.

The judgment in lunacy proceedings on which relator in habeas corpus was placed in custody of her husband being void because there was not a jury trial, she will be remanded to the custody of the sheriff, into which she was taken by proper process, to remain a reasonable time till a jury trial be had.

[Ed. Note.—For other cases, see Habeas Corpus, Cent. Dig. §§ 97, 98; Dec. Dig. ⊙⇒109.]

Appeal from District Court, El Paso County; Dan M. Jackson, Judge.

Habeas corpus by Lillie White against J. A. White and others. Relief denied, and applicant appeals. Modified, and applicant remanded to custody of sheriff.

Hudspeth & Dale, of El Paso, for appellant. T. A. Falvey, Davis & Goggin, C. W. Croom, and Breedlove Smith, all of El Paso, for appellees.

WALTHALL, J. This action was instituted on the 18th day of September, 1915, in the Thirty-Fourth district court of El Paso county by appellant, Lillie White, she being an applicant for a writ of habeas corpus by which she sought to be discharged from custody and restraint. She alleged in her application that she was illegally restrained of her liberty and confined by Peyton J. Edwards, sheriff, Domingo Montoya, constable, and J. A. White, a private citizen, by virtue of certain proceedings instituted in the county court of El Paso county, Tex., and before Hon. Adrian Pool, county judge of said county, under the provisions of the law passed by the Legislature of the state of Texas at its Thirty-Third Regular Biennial Session in 1913, and known as Senate Bill No. 165, chapter 163, and published in the General Laws of the Regular Session of 1913, at pages 341–347, inclusive. The purpose of the proceeding was and is to have declared null and void, as violative of the provisions of the Constitution of the United States and the state of Texas, the statute in question, the applicant stating in her petition for the writ that said law denied to her the guaranties of the federal Constitution that she should not be deprived of her liberty without due process of law, as well as the constitutional provisions of the state of Texas in regard to due process of law, and as well as the right of trial by jury. In the proceedings had under said law, applicant was adjudged a lunatic by the county court of El Paso county, based on the return and finding of the commission named in said act and appointed by the county judge, and appellee J. A. White had assumed control, custody, and restraint of the person of appellant by virtue of an order issued out of said county court; he, the said White, having executed a bond in the sum of $5,000, as provided by said order.

The respondent White answered in the habeas corpus proceeding in the district court that he is the husband of said Lillie White, and that she is in fact of unsound mind, and liable, if not restrained, to do herself and others great injury; that he now has the said Lillie White in his custody under reasonable restraint for the purpose of having her cared for and treated for her mental disorder and restraining her from committing injury to herself or others; that she has been adjudged to be a lunatic, as is shown by the copies of the proceedings attached to the writ of habeas corpus, which respondent says are true and correct; that an order was duly entered that, upon the making of the bond as required by law, the said Lillie White should be turned over to him (respondent), which bond was given, a copy of which order is attached to respondent's answer and made an exhibit.

It was developed on the habeas corpus hearing that appellant was being guarded by deputies from Constable Montoya's office, Montoya having answered that he held appellant by virtue of a warrant for her arrest issued out of the justice court of said county.

L. A. Dale, attorney for appellant, testified in the habeas corpus proceeding that in the lunacy proceeding in the county court, and acting in the capacity as attorney for respondent in said hearing, he presented to County Judge Pool, before the hearing commenced, objections to the proceedings as being violative of sections 13 and 15, art. 1, of the Constitution of Texas, and violative of section 19 of the Bill of Rights; and violative of article 6, and section 1 of arti-

cle 14, of Amendments to the Constitution of the United States. Such objections and exceptions were by the county judge heard and in all things overruled, and the respondent in said lunacy proceeding required to submit to the jurisdiction of the court, and to be tried by the commission theretofore organized by the county judge. Judge Dan M. Jackson, judge of the Thirty-Fourth district court, after hearing the evidence introduced by appellant, and after hearing argument of counsel in all things, refused and denied the relief prayed for by appellant, and remanded her to the custody of J. A. White. Appellant filed a motion for a new trial, requesting the court to reconsider the said order remanding her, which motion was overruled. Appellant excepted to the order overruling her motion and gave notice of and perfected her appeal.

Appellant presents one assignment of error, which is as follows:

"The court below erred in entering its order and decree remanding appellant, applicant in the court below, to the custody of J. A. White, and said order and holding is contrary to the law of the state of Texas for the reason that: (1) The statute under which applicant was held is null and void and unconstitutional, because same deprives her of her constitutional right of a trial by jury, and further deprives her of due process of law. (2) All proceedings had in the honorable court of El Paso county under and by virtue of the purported statute under which this applicant was tried were null and void for the reasons herein set out, and further that the findings of the purported commission therein was contrary to the law of the state of Texas and the Constitution thereof."

The contention of appellant in her first proposition is that the lunacy statute recently passed by the Legislature, and under which she was adjudged a lunatic, in providing for a trial by a commission of physicians, being nonjudicial officers, and being vested by said statute with judicial power, is void because violative of the following constitutional provisions: Sections 13 and 19, art. 1, of the Constitution of this state; section 29 of the Bill of Rights; section 1, art. 5, of the Constitution of this state; and of articles 6, 7, and 14 of the amendments to the Constitution of the United States— by which various provisions it is guaranteed that no person shall be deprived of life, liberty, or property without due process of law.

The lunacy statute complained of is an act passed at the General Session of the Thirty-Third Legislature of this state to amend articles 150 to 165, both inclusive, of the Revised Statutes, relating to judicial proceedings in cases of lunacy and providing for the apprehension of persons of unsound mind. It is a law intended for the establishment and governance of state lunatic asylums in this state and to provide for the restraint and care of insane persons. A brief synopsis of the several provisions of the amending statute, so far as they are brought in question here, shows the following:

Upon an affidavit filed with the county judge that any person is a lunatic, or is non compos mentis, and that the welfare of such person or others requires that such person be placed under restraint or under treatment for such mental condition, and such county judge shall believe the statement in such affidavit to be 'true, he shall issue his writ for the apprehension of such person; or, upon the filing of such affidavit before a justice of the peace, said justice shall issue a writ for the apprehension of such person and make the writ returnable before the county judge, and file or transmit the affidavit to the county judge; the county judge shall, in either event, cause the affidavit to be docketed on the probate docket of his court as an ex parte proceeding, naming the alleged insane person as respondent therein. The writ is directed, and runs as other writs, and is executed by the officer reading the writ to the person named therein, and by delivering a copy of the writ to such person. The officer takes the person named in custody and is directed by the writ to have such person at such time and place as may be directed by the commission, unless some person undertakes before the county judge or justice of the peace, the care, custody, and the appearance of such person before the commission and county judge throughout the proceedings in said cause, by executing the bond required. Upon the filing of the affidavit, the statute requires the county judge to appoint a commission, the number composing the commission to be determined by the last preceding United States decennial census, and in this instance, under the provisions, composed of six physicians, which shall investigate and determine the applications in the affidavit in the manner required. The commission, when appointed, takes the oath prescribed, administered by the county judge. The commission organizes by electing one member as chairman and proceeds with the investigation. The commission fixes the time and place of hearing any evidence they or either of them, or either counsel, may desire to offer. Process for witnesses is provided. The county attorney is notified of the proceedings and represents the affiant in the affidavit. The respondent is entitled to counsel, either of respondent's own selection, or, if none is selected, the county judge shall appoint counsel who is notified of the time and place of the hearing. The commission need not remain together, except at the hearing of testimony, but each member of the commission shall examine respondent. Each of the commission is given power to administer oaths and to compel the attendance of witnesses and the production of evidence, and to punish for contempt. False swearing or perjury in the proceedings is punishable as provided in other cases in the Penal Code. Time for the conclusion of the investigation is fixed, and a report of

the findings as the result of the investigation as determined by a majority of the commission is filed with the county clerk and the report read by the county judge to the respondent in the presence of a majority of the commission. The report shall state (a) whether or not the respondent is of unsound mind; (b) if of unsound mind, should respondent be placed under treatment for such mental condition; (c) if of unsound mind, whether or not respondent is to be placed under restraint. If respondent is of unsound mind and to be placed under restraint, then the report shall show age and nativity of respondent, a general summary of the nature, extent, and duration of mental unsoundness, whether hereditary in respondent's family, estate possessed by respondent, who liable for respondent's support, and such further observations as a majority of the commission may deem pertinent. If respondent is reported to be of unsound mind, and to be placed under treatment, judgment shall be pronounced by the county judge in the presence of respondent, but if respondent is reported not to be of unsound mind, or not to be treated or restrained, respondent is by the county judge discharged. If the report shows respondent is of unsound mind and is to be treated and restrained, judgment is pronounced adjudging respondent to be a lunatic and ordering respondent to be conveyed to one of the state lunatic asylums for restraint and treatment. If respondent is adjudged a lunatic, the county judge issues a writ directed to the sheriff or some other suitable person directing that respondent be taken in custody, and, when so directed, conveyed to some specified state lunatic asylum, unless a bond, provided by the statute, is executed and approved, conditioned that the principal in the bond will restrain, take care of, and have the lunatic placed under treatment for the mental condition, etc. The other provisions of the statute relate to matters which have no bearing on the issues here.

It will be seen, from what has been said in the above statement of the nature and result of this proceeding, that this cause stands before this court on the petition of Lillie White for a writ of habeas corpus, and the answer of J. A. White and his return made to the writ. The petition seeks to show that she is illegally restrained of her liberty through the proceedings had on the probate side of the docket in an ex parte proceeding of the county court acting under the provisions of the act of the Thirty-Third Legislature, relating to judicial proceedings in cases of lunacy. The regularity of the proceedings had in the probate court under said act, the sufficiency of the evidence to sustain any of the facts found by the commission, the advisability and necessity for the restraint, care, and treatment of appellant, or the manner of it, for the mental disorder found to exist, the regularity and sufficiency of the judgment entered on the report of the commission under said act, are not disputed or brought in question. Only two questions seem to be presented by the assignment and the propositions thereunder and the answer of J. A. White to the writ:

First. Is appellant, Lillie White, illegally restrained of her liberty by reason of the unconstitutionality of the proceedings under which she was adjudged insane?

Second. If the act of the Legislature in question is unconstitutional, then, independent of said act, is reasonable restraint by her husband, J. A. White, for the purpose of care and treatment of appellant for her mental disorder, and to prevent injury to herself and others, illegal restraint?

[1] Articles 6 and 7 of the amendments to the Constitution of the United States, invoked by appellant, read as follows:

"Art. 6. In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel for his defense.

"Art. 7. In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury shall be otherwise reexamined in any court of the United States, than according to the rules of the common law."

It is evident, from the verbiage of the article, that article 6 refers only to criminal cases. The Court of Criminal Appeals of this state, in Ex parte Singleton, 72 Tex. Cr. R. 122, 161 S. W. 123, and the Supreme Court, in Legate v. Legate, 87 Tex. 251, 28 S. W. 282, held that a lunacy proceeding, where the restraint complained of is not by reason of the supposed violation of some criminal or quasi criminal law, is civil, and not criminal or quasi criminal. It is the "cause" of the restraint which determines whether the proceeding to "remove" the restraint is a criminal or civil cause. If this proceeding is to be deemed criminal in its character, this court would have no jurisdiction. Again, it was held by the Supreme Court of the United States, in West v. Louisiana, 194 U. S. 264, 24 Sup. Ct. 650, 48 L. Ed. 965, and in Brown v. New Jersey, 175 U. S. 174, 20 Sup. Ct. 77, 44 L. Ed. 119, that the sixth amendment to the Constitution does not apply to proceedings in state courts. The same court, in Ohio v. Dollison, 194 U. S. 447, 24 Sup. Ct. 703, 48 L. Ed. 1062, and in Bolen v. Nebraska, 176 U. S. 83, 20 Sup. Ct. 287, 44 L. Ed. 382, held that article 7 of the amendments to the Constitution of the United States relates only to trials by courts sitting under the authority of the United States. The holding of these courts is that the states, so far as the seventh amendment applies, are left to regulate trials in their

own way. A trial by jury in suits at common law pending in state courts is not a privilege or immunity of national citizenship which the states are forbidden by the federal Constitution to abridge. Due process of law in the states is regulated by the law of the states. Walker v. Suvinet, 92 U. S. 90, 23 L. Ed. 678. We think we need not advert further to the amendments to the federal Constitution in determining the constitutionality of our lunacy statute.

[2] Appellant quotes section 1, art. 5, of the Constitution of this state, which declares that:

"The judicial power of this state shall be vested in one Supreme Court, in Courts of Civil Appeals, in a Court of Criminal Appeals, in district courts, in county courts, in commissioners' courts, in courts of justices of the peace, and in such other courts as may be provided by law"

—and makes the contention that the Legislature possessing no judicial power cannot delegate same and that in the lunacy statute judicial powers are given and were exercised by the commission of physicians, in that the commission, acting under the statute, organized itself into a body for the trial of the issue of the lunacy of appellant, the advisability of her restraint, care, and treatment; organized by electing one of its members chairman; heard testimony in the absence of the county judge; held its own sessions; administered oaths to witnesses; determined for itself the relevancy, pertinency, competency, and admissibility of all the testimony offered; tried the issues; made findings; personally examined appellant; made up and filed its findings; heard its report read and the judgment of the court pronounced thereon. That, while the commission was exercising some judicial powers, it lacked some of the essential characteristics of a court, viz.: (a) It had no jurisdiction to sit in any lunacy proceeding other than the one in which it was organized; (b) its members took no oath of office by which the members swore to uphold the laws and Constitution of the state; (c) it had no power to render final judgment, hence was not a court, and these duties, powers, and functions are given the commission under the lunacy statute and exercised by the commission separately and apart from the county judge. The contention is that by the exercise of the powers, duties, and functions given the commission under the lunacy statute, the result is that appellant is restrained of her liberty, without due process of law accorded her by section 13, art. 1, of the Constitution of this state, and by the due course of the law of the land, by section 19 of the Bill of Rights.

If we may further briefly summarize the contention of appellant, it is: (1) That the commission created by the lunacy statute has no inherent judicial power to' restrain appellant of her liberty, and that an exercise of such power as is given the commission in lunacy proceedings by the statute is an exercise of judicial power, and such power can be exercised only by a court to which that power is conferred by the state, and that the commission, with such imposed duties, is not such a court, nor a function named by the Constitution of such court; (2) that by section 15, art. 1, in which it is said "the right of trial by jury shall remain inviolate," the right of trial by jury in lunacy proceedings is perpetuated and carried forward as that right existed and was a part of the statute law at the time of the adoption of the Constitution in 1876, and that the commission is not a jury; (3) that the proceedings had under the lunacy statute deny to appellant due process of law, in that no legal notice is provided, or can be given of the proceedings, or thereunder; (4) that J. A. White, though a husband, cannot deprive appellant of her liberty without due process of law; that the issue made by appellant in the court below and in this court is not whether she is sane or insane, but whether she has had such trial of that issue as is guaranteed her by the Constitution of this state.

Appellee, in his brief and argument, denies the illegality of the restraint imposed upon appellant; denies that the provisions of the lunacy statute of 1913 are violative of any of the provisions of the Constitution of the United States or any of the amendments thereof, or of any of the provisions of the Constitution or Bill of Rights of the state of Texas; that, if it be assumed that appellee is illegally restrained of her liberty, she has a plain and adequate remedy which she has sought in this proceeding; that if she is illegally restrained, in order to procure her release, it would be necessary only that she procure a hearing under habeas corpus and sustain her application for said writ by proof establishing a prima facie case of illegal restraint; that the law in question contains the two elements necessary to relieve it of the objections made, viz., notice and an opportunity to be heard; that section 15, art. 1, of the Constitution, has no application to lunacy inquiries. It is our opinion that section 15, art. 1, of our state Constitution, is the only constitutional provision involved in the trial of this case.

We think that portion of section 15, art. 1, of the state Constitution, which provides that the "right of trial by jury shall remain inviolate," must be considered as perpetuating, or rather continuing the right unchanged in the cases in which at the date of its adoption it was then a part of the statute law of the state. All of the Constitutions of the republic and state of Texas have preserved the right of trial by jury in the same language. Cockrill v. Cox, 65 Tex. 669. By chapter 93 of the General Laws of 1857–58, the State Lunatic Asylum was provided for and proceedings inaugurated for admittance of inmates to the institution. Section 8 of the act provides that proceedings to adjudge one a lunatic shall be before the chief jus-

tice of the county, and that 12 jurors shall be summoned and sworn to inquire into and a true verdict render, etc. At the time of the adoption of the present Constitution in 1876, the act of 1858 providing for a lunacy inquiry conducted by the county judge, a jury of 12 men was still in force and so remained until August 15, 1879, when an act was passed changing the number of jurors in lunacy inquiries from 12 to 6, the purpose of the change in the number, no doubt, made to conform the practice to the organic change made by the constitutional provision that a jury in the county court should consist of 6 men.

Until the lunacy statute of 1913 was enacted, the right of trial by jury in lunacy cases was preserved by express statutory enactment, although at different times the number of men constituting the jury have not been the same. In the case of Cockrill v. Cox, supra, and often referred to in later opinions, the Supreme Court of this state, through Justice Robertson, makes this observation:

"The provision, in the Constitution of 1876, that the right of trial by jury shall remain inviolate, must be considered as perpetuating the right in the cases, in which, at the date of its adoption, it had been so universally recognized and firmly established," as in the contests arising over the proof of wills—the case then before the court.

The court, in the same case, used this expression:

"It has been uniformly construed to perpetuate the right in the cases in which it exists, under the laws in force and practice prevailing at the date of the adoption of the particular Constitution."

The right of trial by jury in lunacy inquisitions seems to have been one of "the cases in which the right existed and had been uniformly and universally recognized and firmly established" by the statutes of the state at the time of the adoption of the present Constitution. Under that construction, it might not be necessary that the case to be tried be such as was originally within the constitutional guaranty of "right of trial by jury," but a right "firmly established" at the time of the adoption of the Constitution and by construction now read into that instrument as a right. But the question still remains: Is the lunacy statute to be held unconstitutional because the Legislature, in enacting the law of 1913, did not provide for a trial by jury, but did provide that the county judge should appoint a commission which should investigate and determine the allegation of lunacy in the affidavit in the manner provided in the act? The Supreme Court of this state have given us some rules of constitutional construction. In Orr v. Rhine, 45 Tex. at page 354, that court said that when jurisdiction is within legislative discretion to create other tribunals than those named in the Constitution, or to enlarge the jurisdiction of such as are named,

we see no reason why the Legislature may not exercise their discretion, etc., and that this has been frequently done where the constitutional provisions are more stringent than with us. "We can only hold a law unconstitutional which plainly violates some constitutional provision."

The same court, in Lytle v. Halff & Bro., 75 Tex. at page 137, 12 S. W. at page 613, uses this language:

"Courts are not authorized to hold that a Legislature has exceeded its power unless able to point to some part of the Constitution which denies to that body the right to exercise the given power."

In Harris County v. Stewart, 91 Tex. 143, 41 S. W. 655, the Supreme Court said:

"Courts have no right to declare an act of the Legislature void because it is against the spirit of the Constitution; when a judge pronounces a law to be contrary to the Constitution, he must be able to put his finger upon the provision of that instrument which prohibits the act, or from which the prohibition necessarily arises."

The Constitution does not in words guarantee the right of trial by jury in lunacy cases, and the right in such cases is one that comes in by interpretation and adoption, because by "statutory provision and practice it had become established." The act in question does not in terms deny the right of trial by jury. In the language of the Lytle v. Halff & Bros. Case, supra, can this court point to some part of the Constitution which denies to the Legislature the right to pass the act in question; or the commission created by the act, the right to exercise the powers there given? Or, in the language of the Harris County v. Stewart Case, supra, can we put our finger upon the provision of the Constitution which prohibits the passage of the lunacy act or the provision in the Constitution from which the prohibition necessarily arises? If the creation of the commission by the act has the effect necessarily to destroy the right of trial by jury in lunacy proceedings, and the respondent in such proceedings is left without remedy to enforce such right by reason of the act creating the commission, where a jury demand is made, it might be that section 15, art. 1, of the state Constitution, as construed in Cockrill v. Cox, and in Taylor v. Boyd, 63 Tex. 541, is violated by such provision. We think the act in question has that effect.

[3] It is insisted by appellee that, if the Constitution of 1876 guaranteed the right of trial by a jury in lunacy inquiries, the trial would be before a jury of 12 and not before a jury of 6 men, as the statute and practice at the time of the adoption of the Constitution, in lunacy cases, was before 12 and not 6 jurors, and therefore a trial before 6 would likewise be in violation of the Constitution. An answer to that contention is found in the section and article extending the right of trial by jury in which it is provided that "the Legislature shall pass such laws as

may be needed to regulate the same," that is, to regulate the trial by jury. And further, the Constitution, in section 17, art. 5, fixed the number of jurors in the county court at 6. We think that, in view of the provisions of the Constitution quoted, it might safely be held that it was the right of trial by jury, and not the number constituting the panel, that was extended and guaranteed. By comparison of the provisions of the law in operation at the time of the adoption of the Constitution of 1876 and up to the time of passage of the lunacy statute in 1913, it will be observed that many of the provisions of the two statutes are the same. The old law provided that the officer in executing the writ for the apprehension of the alleged lunatic should "take into his custody the person named therein, and at the designated time and place have him before the county judge for trial and examination," while the present statute provides for the reading of the writ to the person named and delivering a copy of the writ to such person. We are of the opinion that a citation or other notice of the pending proceedings than that provided could not be required. In Cooley's Const. Lim. 356, it is said:

"Due process of law in each particular case means such an extension of powers of government as the settled maxims of law permit and sanction, and under such safeguards for the protection of individual rights as those maxims prescribe for the class of cases to which the one in question belongs."

That definition was applied by the Supreme Court of this state in Beyman v. Black, 47 Tex. at page 571. When legislation applies alike to all persons under like conditions, it is not open to the objection that it denies to them the equal protection of the laws. Union Cent. Life Ins. Co. v. Chowning, 86 Tex. 654, 26 S. W. 982, 24 L. R. A. 504. But there must be a hearing after the party is brought before the court. Mr. Cooley, in his work on Constitutional Limitations, adopts as the best definition that given by Mr. Webster in the Dartmouth College Case, of the term "due process of law of the land"—"a law, which hears before it condemns; which proceeds upon inquiry, and renders judgment only after trial." And this definition is applied by the Supreme Court in the Union Cent. Life Ins. Co. v. Chowning, supra. Is a trial by a jury in a lunacy proceeding on a demand for a jury necessary to a proper hearing, or can the Legislature, as in the act complained of, substitute a commission of physicians, of which respondent has no voice in their selection, for the jury? In support of the affirmative of this question, appellee refers us to the cases of Pittman v. Byars, 51 Tex. Civ. App. 83, 112 S. W. 102; Dennee v. McCoy, 4 Ind. T. 233, 69 S. W. 858; Traction Co. v. Hof, 174 U. S. 1, 19 Sup. Ct. 580, 43 L. Ed. 873; Chavannes v. Priestley, 80 Iowa, 316, 45 N. W. 766, 9 L. R. A. 193; In re Bresee, 82 Iowa, 573, 48 N. W. 991; In re Clark, 86 Kan. 539, 121 Pac. 492, 39 L. R. A. (N. S.) 680, Ann. Cas. 1913C, 317; In re Crosswell, 28 R. I. 137, 66 Atl. 55, 13 Ann. Cas. 874; Fant v. Buchanan (Miss.) 17 South. 371; In re Ross, 38 La. Ann. 523—and concludes from the reasoning in the cases that proceedings in lunacy have never been regarded as in any way limited or controlled by the constitutional provision that the right of trial by jury shall remain inviolate, that the lunacy inquiry is a special proceeding to be conducted before a judge and not a court, under a special law, segregating them entirely from trials in the courts, that none of our Constitutions or legislative acts have ever confided these inquiries to a court, save and except the act of 1846, which was repealed in 1848. A review of these cases would extend this opinion to too great length. The Pittman v. Byars Case is the only Texas case referred to. The suit was by petition for writ of habeas corpus for possession and custody of a minor child. Pittman insisted that, it being a civil case, he was entitled to a trial by jury. The Third Court of Civil Appeals, through Justice Rice, after quoting at length from 24 Ency. Law & Prac. p. 100, et seq., said:

"Under these and similar constitutional provisions in most, if not all, of the states, there are many kinds and character of actions in which it has been held that the parties thereto were entitled to trial by jury, such as * * * injunction, mandamus, habeas corpus, contempt, motions to disbar, and many others; * * * and is yet, the uniform practice in this state for the courts in habeas corpus trials to determine all matters triable therein without the intervention of a jury."

That court, after discussing the general rule in civil proceedings, other than actions, said:

"The constitutional requirement that the right of trial by jury shall remain inviolate does not confer the right where it did not exist before the adoption of the constitution"—and cited many cases so holding.

We understand that the conclusion reached by the Court of Civil Appeals in Pittman v. Byars is based on the statement that:

"Both before and since the adoption of the present Constitution, it has been the uniform practice in this state for habeas corpus cases to be tried before the court, and not by a jury."

Had the statute before the present Constitution given the right of trial by jury, and the uniform practice in such cases been before juries, "the beaten path" would have led the court to hold otherwise.

We have read with much interest appellee's brief and the cases in full to which he refers us therein, so far as we have had access to them; but we have not been able to harmonize some of them with the opinion of our own courts in the construction placed upon our own Constitution and statutes. In the cases of In re Bresee, 82 Iowa, 573, 48 N. W. 991, and the case of Black Hawk County v. Springer, 58 Iowa, 417, 10 N. W. 791, by the Supreme Court of Iowa, in discussing

In re Bresee, where it was urged that a party charged with lunacy was entitled to a trial by jury, the Supreme Court held that the provisions of the Constitution and statute of that state "applied 'only to criminal prosecutions or accusations for offenses against the criminal law, where it is sought to punish the offender by fine or imprisonment,'" and that the inquest of lunacy is not a criminal proceeding, and that therefore the constitutional authority as to how the issues under the statute of that state in such a proceeding (lunacy inquiry) are to be tried was not impaired.

[4] We do not understand that the Constitution, statute, or practice in civil cases in this state has ever been so limited or applied. It is with much hesitation that we reach the conclusion that the lunacy statute passed by the Thirty-Third Legislature, in substituting a commission, composed of physicians, for a jury, in lunacy proceedings, deprives the appellant in this case of one of the rights guaranteed to her by the Constitution of this state, the right of trial by jury; but, having so concluded, we therefore hold that the proceedings against appellant before the commission and the judgment entered on the report of the commission are void for the reasons given. Her discharge from the restraint complained of, after a proper affidavit has been filed charging insanity, can be had only upon dismissal of the lunacy proceedings or a verdict of the jury as provided in article 156 of the Revised Civil Statutes of 1911.

The judgment of the court below is modified so as to remand the appellant to the custody of the sheriff of El Paso county, to remain in his custody until a reasonable time shall have elapsed within which proceedings may be had under the old law, in accordance with the opinion rendered herein; and, as so modified, the judgment of the lower court is affirmed.

HIGGINS, J. (concurring). The effect of section 15, art. 1, of the Constitution of Texas, wherein it is provided that "the right of trial by jury shall remain inviolate," was to perpetuate the right in those cases wherein, at the date of its adoption, it had been universally recognized and become firmly established. Cockrill v. Cox, 65 Tex. 669.

Without reviewing in detail the history of the legislation upon the subject, it is sufficient to say that by the eighth section of the Act of February 5, 1858 (4 Gammel's Laws, 986), it was provided that proceedings to adjudge one a lunatic should be had before the Chief Justice of the county, and a jury should be summoned and impaneled to try the matter. This remained the law until the adoption of the present Constitution. The right to a trial by jury in a lunacy proceeding thus existing when the Constitution was adopted, the same, by the provision quoted, was perpetuated; and the Legislature was without authority to destroy it, as was attempted to be done by the act under which appellant is held in custody. Cockrill v. Cox, supra.

In County of Black Hawk v. Springer, 58 Iowa, 417, 10 N. W. 791, it was held that the constitutional provision that "in all criminal prosecutions, and in cases involving the life or liberty of an individual, the accused shall have a right to a speedy and public trial by an impartial jury," applied only to criminal prosecutions or accusations for offenses against the criminal law, where it was sought to punish the offender by fine or imprisonment; that it did not apply to a lunacy inquiry before a board of commissioners, because such was in no sense a criminal proceeding. Conceding the correctness of that interpretation of the Constitution of Iowa, it is apparent that the provision so construed presents a different question from the effect to be given to our constitutional provision, in view of the law existing at the date of its adoption. The rule of constitutional interpretation announced in Cockrill v. Cox and now considered does not seem to have been involved.

In re Bresee, 82 Iowa, 573, 48 N. W. 991, denies the right of trial by jury in a lunacy proceeding, basing its holding upon the interpretation given in County of Black Hawk v. Springer, supra, to sections 9 and 10 of article 1 of the Iowa Constitution.

The reasoning in Fant v. Buchanan (Miss.) 17 South. 371, denying the right of a trial by jury, is not applicable under our Constitution, laws, and system of jurisprudence.

In State v. Linderholm, 84 Kan. 603, 892, 114 Pac. 857, it is held that a hearing to determine the mental condition of an alleged insane person is not a "trial" within the meaning of the constitutional provision securing the right of trial by jury, but is merely an inquest which bears no resemblance to an action either civil or criminal. This decision I do not regard as sound. To my mind, it matters not what the nature of the proceeding may be. If, in such proceedings, the right to a jury trial was universally recognized and had become firmly established when our Constitution was adopted, then the right was perpetuated by the provision now considered. Sporza v. German Savings Bank, 192 N. Y. 8, 84 N. E. 406.

The expression of opinion by our Court of Criminal Appeals, in Ex parte Singleton, 72 Tex. Cr. R. 122, 161 S. W. 123, is obiter dictum and cannot be regarded as authority.

The cases from Iowa and Mississippi are thus distinguishable, and I do not concur in the views expressed in the Kansas case and Ex parte Singleton. The other cases cited by appellees upon this phase of the case are not regarded as in point. For the reason indicated, I regard the act in question as in conflict with section 15, art. 1, of the state Constitution, and for that reason invalid.

But it is contended, if the act is subject to this objection, the district judge before whom the habeas corpus proceedings were held properly refused to discharge the applicant because she was in fact insane, and was properly restrained for the protection of herself and others and that she might be properly treated for her mental disorder. See Ex parte Dagley, 35 Okl. 180, 128 Pac. 699, 44 L. R. A. (N. S.) 389; In re Dowdell, 169 Mass. 387, 47 N. E. 1033, 61 Am. St. Rep. 290; Denny v. Tyler, 85 Mass. (3 Allen) 225. The statement of facts is silent with respect to the mental condition of Mrs. White, and the record otherwise would not justify the court in assuming that she was insane. The rule announced in the cases just noted therefore could have no application here.

The court below erred in refusing the applicant any relief. She should have been remanded temporarily to the custody of the sheriff, in order that proceedings may be had under the old law under which a jury should be impaneled and the issues tried as therein provided.

The constitutional defect indicated affects the validity of the entire act under consideration and leaves the old lunacy act in effect. The applicant may be properly held in restraint and custody until her mental condition can be determined under the old law.

A proper complaint in lunacy has been filed against her, warrant issued under which she was taken in custody, and she may be held thereunder until tried. If the proceedings against her be not promptly consummated, she should be entitled to discharge upon an application for habeas corpus made to any court of competent jurisdiction.

Under the authorities, I believe we are warranted in temporarily remanding appellant to the custody of the sheriff until her mental condition and the proper disposition to be made of her can be determined in a lawful manner. In re Crosswell, 28 R. I. 137, 66 Atl. 55, 13 Ann. Cas. 874; In re Chow Goo Pooi (C. C.) 25 Fed. 77; In re Dowdell, supra; Denny v. Tyler, supra.

On Rehearing.

WALTHALL, J. Appellees, in their motion for a rehearing, insist that the opinion of this court is in error in holding that the lunacy statute of 1913 is in violation of section 15, art. 1, of the Constitution of this state, and state four grounds for their contention: First, because lunacy inquiries at the time of the adoption of our present Constitution were not "trials by jury," and the "right of trial by jury" in the sense of the constitutional provision referred to did not exist, and had been neither universally recognized nor established by the statutes of Texas in lunacy inquisitions at the time of the adoption of the present Constitution; second, because no court, as a court, had ever been given, by any Constitution, jurisdiction of lunacy inquisitions before the adoption of our present Constitution, but, on the contrary, before and at the very time of the adoption of our present Constitution, lunacy inquiries under the statute of the state were confined to the Chief Justice or county judge, who was directed to call to his aid an advisory board of 12 men, erroneously called a jury, but not in fact, a jury; third, because "trial by jury," as that term is used in the Constitution providing that "the right of trial by jury shall remain inviolate," had a specific, well-defined, and settled meaning at the time it was incorporated into our Constitution, and meant a trial by a jury of 12 men in a court existing as such, with the judge of that court presiding over it as a court, with power to rule on the admissibility of evidence, control the trial, and set aside the findings or verdict of the jury; fourth, because the state is endowed with the duty of caring for its citizens of unsound mind, and in the exercise of its police powers may prescribe such rules and regulations as it sees proper, without conferring jurisdiction on any of its courts to make such inquiry and call to its assistance any board or commission, whether called a jury or not.

Appellant refers us to a number of cases, but insists with much force of reasoning that the cases of Capital Traction Co. v. Hof, 174 U. S. 1, 19 Sup. Ct. 580, 43 L. Ed. 873, and Dennee v. McCoy, 4 Ind. T. 233, 69 S. W. 858, are in point, and sustain their contention. The importance of the question involved, the constitutionality of an act of the Legislature, suggests a very careful and critical examination into the cases cited. The two cases cited are cases construing the seventh amendment to the Constitution of the United States, which is as follows:

"In suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved and no fact tried by a jury shall be otherwise reexamined in any court of the United States than according to the rules of the common law."

Mr. Justice Gray's opinion in Traction Co. v. Hof is quite lengthy, going into the full history of the seventh amendment, and the case is in error to the Court of Appeals of the District of Columbia to review a judgment of that court reversing an order of the Supreme Court of the District and remanding the case with directions to quash a writ of certiorari to a justice of the peace to prevent a civil action to recover damages in the sum of $300 from being tried by a jury before him. It will be noted the case then under investigation was a "suit at common law" and strictly under federal court construction under the amendment. The Dennee v. McCoy Case is likewise a case involving the application of the seventh amendment to the federal Constitution, and was a hearing on appeal from the United States Court for the Southern District of the Indian Territory. The provisions of the federal Constitution with regard to trial by jury have no

application to trials or proceedings in state courts, but relate only to proceedings in the courts of the United States, which include the courts of the District of Columbia and the territories. In Walker v. Sauvinet, reported in 92 U. S. 90, 23 L. Ed. 678, Chief Justice Waite said that the states, so far as the seventh amendment to the Constitution of the United States is concerned, are left to regulate trials in their own way. A jury trial in the state courts may not meet the definition of a common-law jury or a trial under federal practice. A jury, under the seventh amendment to the federal Constitution, was a common-law jury, and the trial by jury under the amendment has application only to trials in the federal courts. It seems to us that it follows as a necessary conclusion that the definition of a trial in a "suit" before a common-law jury in a federal court would be somewhat misleading when applied to a trial in many state courts. A common-law jury in a suit was composed of 12 men. Can it be said that because a jury in the justice and county court under the state law and in the district courts, when a less number than 12 is agreed upon, are not a jury, because not composed of the common-law number of 12 men? We believe not. Can it be said that because the pleading in the justice court in this state is oral, except such as is noted on the docket, and no charge is given the jury, but the jury are the judges of both the facts and the law, that such facts destroy the idea in the state practice that the 6 men selected to try a case are not a jury and the hearing not a trial? True, they are not a common-law jury, but we think they are a jury, and have always been so regarded. They must have the qualifications of jurors and be selected in the manner required by the state statute. In lunacy investigations under the statute of 1858, article 5832 of the old law (Paschal's Dig.), where information in writing was given to the presiding justice of the county that a person in his county is a lunatic, or non compos mentis, etc., and the presiding justice was required to place such person under restraint, and "twelve competent jurors of the county to be summoned, who shall be sworn to inquire and a true verdict render, whether such person is of sound mind or not; whereupon, the matter shall be tried, and if the jury shall return a verdict that the person is not of sound mind, and that he should be placed under restraint, the same shall be recorded, and the presiding justice shall thereupon order him to be sent to the lunatic asylum, unless, etc.," providing for the giving of a bond by some friend, it seems clear to us that the statute contemplates a trial of the issue of insanity, and that the 12 men selected having the qualification of jurors under the law shall determine the issue. That is the only hearing accorded the person so charged.

The provisions of the statute as to jury trials in lunacy inquiries was in force at the time of the adoption of the present Constitution in 1876. It will be noted that the above article of the statute provided that the 12 men summoned before whom "the matter shall be tried" shall be competent jurors, should be of the county, should be sworn, should inquire whether the person charged as lunatic is of sound mind or not, shall render a verdict, and upon their verdict the presiding justice shall enter his order or judgment. The statute calls the 12 competent jurors thus summoned and sworn a jury, and the proceedings a trial. We have found no change in the practice or proceedings in lunacy trials until the change in the number of jurors in lunacy inquiries was made in 1879. The former statute fixed the number of jurors at 12. The number of the jurors thus fixed at 12 would not necessarily be a common-law jury; but we think, the statute having fixed the number, it would be a statutory, as distinguished from a common-law jury, though the number constituting the panel be the same. All of the Constitutions of the republic and state of Texas have preserved the right of trial by jury, in the same language, "the right of trial by jury shall remain inviolate." It cannot be said that a person charged with lunacy, under the statute above quoted at the time of the adoption of the Constitution, could be adjudged a lunatic by any other proceeding than that provided in the cited article. The affidavit charging lunacy presented an issue to be tried. The proceeding provided to determine the issue was a trial of the issue. The only method of determining the issue was by 12 competent jurors. Their duties, of inquiry and verdict, were distinct from those of the presiding justice. They were not summoned as referees nor as an advisory board to the court, nor did their duties run in that direction. The character of the court's order depended solely on the verdict rendered. We think it could be well said that, under the law and the practice under the section of the statute cited, when a person was charged with lunacy, that person had the right to have that issue determined by the body of 12 competent jurors. That law and that proceeding were the only ones prevailing and existing in lunacy cases at the time of the adoption of the present Constitution. If it was a right existing at the time of the adoption of the Constitution to have the issue of lunacy determined by a jury, we believe that the right is perpetuated, carried forward—"remains inviolate."

It seems to us that the right of trial by jury guaranteed by section 15, art. 1, of the Constitution does not depend upon the character, name, or duties of the officer whom the law names or appoints as the one to summon the jury in a lunacy inquiry and enter an order or judgment on the jury's finding. It is the right of trial by jury that

"remains inviolate." The right of trial by jury is a right preserved to the litigants of the issue then being tried, and while the presiding officer, judge, or court named in the law is a necessary function to the hearing or trial of the issue, his position or relation to the trial is functional and incidental. His relation to the trial and the duties he performs while under the statute a necessary part of the trial or hearing, the part he takes in the hearing is not the part guaranteed, but it is the hearing before the jury and the jury's verdict. We think the Legislature could place the lunacy inquiry before any other court, judge, or officer on whom jurisdiction might properly be conferred as a presiding officer, and the right of jury trial would not, by reason of change of presiding officer, be affected. The constitutional provision does not seem to have in view the official title or duties of the presiding officer. Justice Gray, in Traction Co. v. Hof, said that a trial by a jury of 12 men before a justice of the peace, having been unknown in England or America before the Declaration of Independence, is not a trial by jury within the meaning of the seventh amendment, and held that a common-law trial by jury in a court of record upon appeal from a judgment of a justice of the peace in a civil action is sufficient to satisfy the constitutional right of trial by jury under the seventh amendment, and that is the material point held in that case. But in lunacy inquisitions in this state, there is no right of appeal, and the person charged with lunacy, unless given the right in the proceedings in the tribunal in which the inquiry is had, could never have extended to him the right to have the issue of lunacy determined by a jury. If the right of trial by jury under the seventh amendment, then under consideration before Justice Gray, must be considered and granted, and if that right was granted in an appeal and was "sufficient to satisfy the constitutional right of trial by jury" under the amendment, it still was a recognition of the right. That eminent jurist did not say what would have been the holding of the Supreme Court if the right of appeal to another court had not been extended; the question was not before the court. Neither did that court pass upon the question, in that case, as to what would have been the ruling if the right of trial by jury in a case before a justice of the peace had been the law and the practice in federal courts before the adoption of the seventh amendment. That court simply followed the rule that where, prior to the Constitution, certain cases were triable without a jury, it was not error to refuse a jury trial. Here both the law and the practice in lunacy cases were fully established at the time of the adoption of section 15, art. 1, of the Constitution. We are of the opinion that, whether or not the jury or the trial provided for in lunacy investigations comes fully up to the definition given of a common-law jury and trial under federal practice, still it is such "right of trial by jury as remain inviolate" within the contemplation of the state Constitution. The provisions of state Constitutions and the court's construing them, so far as we have been able to examine into the authorities, uniformly hold them as guaranteeing the continuance of the right given under a general law unchanged, as it existed either at common law or by statute in the particular state at the time of the adoption of the Constitution. There is an exception if the right is purely local and not general.

We so understand the case of Sporza v. German Savings Bank, a New York case, 192 N. Y. 8, 84 N. E. 406. In that case it was insisted that the verdict of the jury in insanity inquiries was not a matter of right, but that it was resorted to by the chancellor for the purpose of informing the conscience of the court. After quoting from cases to show what the practice in that state formerly was, in the absence, apparently, of statute, the majority members of the court said it was apparent that at the time the provision, to the effect that a trial by jury in all cases in which it has heretofore been used shall remain inviolate, was incorporated into the Constitution of that state, the custom prevailed, on the part of the chancellor, in order to inform his conscience, to require a trial by jury of the question of the insanity of a person, in all cases of doubt, in proceedings taken with reference to his commitment and to the disposal of his property. Thereafter the Legislature passed an act to organize a state lunatic asylum and to provide for its inmates. Among other things, it was provided that no person should be admitted to the asylum except upon an order of a court, based upon a certificate under oath of two physicians, etc.

It is true, as claimed by appellee, that the duty of caring for its citizens of unsound mind is and has been with the state, and that in the exercise of its police powers may prescribe such rules and regulations as may be necessary and proper in the discharge of such duty, and that without conferring jurisdiction on any of its courts to make such inquiry. But where the state in the exercise of that duty has prescribed a method or form of inquiry and determination of the question of insanity, and that method was to submit the issue to a jury and have the result so determined, and where the state, by constitutional provision thereafter adopted, carries forward and continues the right to have such issue of insanity determined as it formerly was, it seems that the Legislature may not thereafter destroy that right by prescribing another and different rule or regulation. If we are not in error in concluding that the 12 men nominated in the statute of 1858 to determine the issue of in-

sanity was a jury, and the hearing a trial, it seems to us the right of jury in insanity inquiries would be similar to the right of jury trial in any other character of cases where jury trials are guaranteed; we can see no difference. The chancellor examined the certificate and such other facts as were produced, and made a final order of commitment. The New York Constitution provides, "The trial by jury in all cases in which it has heretofore been used shall remain inviolate forever," and provides for a waiver of jury trial. The majority of the court held that Mrs. Sporza had the right to such a trial, but had waived that right. Two of the members of the court, after reviewing many cases and distinguishing the Sporza Case from those discussed, and after reviewing former Constitutions of that state and showing that the right of trial by jury prevailed prior to the present Constitution, on the suggestion that the constitutional provision, relative to trial by jury, referred to a common-law jury of 12 men, said that the statement was accurate in criminal cases in which the opinions were rendered, and further said:

"I cannot find in it anything which amounts to a denial of the proposition that, if the right to a trial by a jury such as was customarily summoned under a commission de lunatico inquirendo existed before the Constitution, it is not equally preserved by the fundamental law."

It is claimed in appellee's motion that we are in error in remanding appellant to the custody of the sheriff for the reason, as is insisted, that J. A. White, the husband, has the right to her custody, and it being undisputed that she is insane and should be restrained, and that in this proceeding the judgment could not be attacked and the bond of J. A. White set aside. If we are right in the conclusion that the judgment is void not being based on the verdict of a jury, the only condition under the statute on which a judgment adjudging appellant a lunatic could be rendered, it seems to follow that the proceeding in the progress of determining the issue of insanity would rest just where it was after the affidavit placed her before report of the board of physicians, in the custody of the sheriff, awaiting a hearing. The bond, under the statute, is given after the hearing and judgment. No bond is provided by statute before the verdict. If the appellee J. A. White, by reason of his being the husband of appellant, has the right, independently of the statute and bond, to have the custody of appellant, as claimed, why have a trial, verdict, judgment, or bond? We do not so construe the law. Furthermore, by what authority do appellees assume to say that Mrs. White is insane and should be restrained? There is nothing in this record to sustain such an assertion, except the finding of a body which has assumed to so adjudge contrary to her constitutional rights. It was not incumbent upon her in this condition of the record to offer any proof of her sanity. The presumption is that she is sane and entitled to her liberty until the contrary is found and established by competent authority. If we could accept appellees' premise that she is insane and should be restrained, then it might be that her husband could lawfully assert a right to her custody without a bond or any other formality. Appellees seem to lay great stress upon appellant's failure to deny that she is insane and should be restrained, but we can see no necessity for her to do so, when there is nothing in the record to rebut the presumption of sanity which obtains in her favor. When J. A. White filed an affidavit charging appellant with insanity, had a warrant for her arrest issued, and served and she placed in the charge of the sheriff, we are constrained to believe that he lost whatever right of custody of appellant he might have had, and his right thereafter is controlled by the statute in his giving the bond provided. The bond given is a statutory bond, and his right to the custody of appellant would depend upon the statute under which it was given. We think we are not in error in placing appellant in charge of the sheriff.

The motion for rehearing is overruled.